**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:<br><br>WESTBANK HOLDINGS, LLC, *et al.*[1] | §<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO: 22-10082<br><br>CHAPTER 11<br><br>SECTION A |
| WESTBANK HOLDINGS, LLC, et al.<br>LIQUIDATING TRUST[2]<br><br>PLAINTIFF,<br><br>V.<br><br>INTERSTATE FIRE & CASUALTY COMPANY,<br>INDEPENDENT SPECIALITY INSURANCE COMPANY, and<br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON<br><br>DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | ADV. NO. 23-1010 |

**MEMORANDUM OPINION AND ORDER**

Before the Court is: (i) the *Motion To Compel Arbitration and To Stay or, Alternatively, Dismiss the Proceedings* (the "Motion"), [ECF Doc. 10], filed by Interstate Fire & Casualty Insurance Company, Independent Specialty Insurance Company, and Certain Underwriters at Lloyd's, London Subscribing to Policy No. VPC-CN-0002660-01 (collectively, the "Insurers");

---

[1] An Order directing joint administration of the chapter 11 bankruptcy case of Westbank Holdings, LLC, as lead case, with the chapter 11 bankruptcy cases of affiliated debtors, Cypress Park Apartments II, LLC, No. 22-10083, Forest Park Apartments, LLC, No. 22-10085, Liberty Park Apartments, LLC, No. 22-10084, and Washington Place, LLC, No. 22-10086, was entered on February 4, 2022. [ECF Doc. 17]. An *Order* directing the joint administration of affiliated debtor Riverview Apartments, LLC, No. 22-10176, was entered on March 14, 2022. [No. 22-10176, ECF Doc. 19].

[2] Per this Court's Order dated November 6, 2023, Westbank Holdings, LLC, et al. Liquidating Trust was substituted for Westbank Holdings, LLC as the party plaintiff in the adversary proceeding.

(ii) the opposition to the Motion filed by Westbank Holdings, LLC, et al. Liquidating Trust (the "Liquidating Trust"), [ECF Doc. 11]; (iii) a reply brief filed by the Insurers in support of the Motion, [ECF Doc. 12]; and (iv) a sur-reply filed by the Liquidating Trust in opposition to the Motion, [ECF Doc. 18]. For the reasons that follow, the Court **GRANTS** the Motion.

## BACKGROUND

### A. Procedural History of the Debtors in this Bankruptcy Case

The procedural history of this case is lengthy, but a brief recitation of relevant facts is instructive. Joshua Bruno was the sole managing member of each of six affiliated Louisiana limited liability companies: Westbank Holdings, LLC; Cypress Park Apartments II, LLC; Liberty Park Apartments, LLC; Forest Park Apartments, LLC; Washington Place, LLC; and Riverview Apartments, LLC (the "Debtors"). Each of the six Debtors was a holding company for multifamily apartment buildings and, prepetition, provided subsidized-rental housing for low-income families in the greater New Orleans area. Bruno authorized five of the Debtors to file petitions for chapter 11 bankruptcy relief on January 27, 2022, and authorized the sixth Debtor, Riverview Apartments, LLC, to file on February 23, 2022.

For the reasons explained in its *Memorandum Opinion and Order* dated August 1, 2022, the Court required the appointment of a trustee under 11 U.S.C. § 1104 to manage the Debtors' properties and administer the estates. [No. 22-10082, ECF Doc. 444]. The Office of the United States Trustee appointed Dwayne Murray to serve as the chapter 11 trustee (the "Trustee"). The Trustee proposed to sell the Debtors' properties through an auction process, which the Court approved. [No. 22-10082, ECF Docs. 570, 637 & 788]. Fannie Mae, the Debtors' secured lender holding a first-position security interest in substantially all of the Debtors' assets, proposed a liquidating plan that incorporated the Trustee's sale and auction process (the "Plan"), [No. 22-

10082, ECF Docs. 747 & 916], which this Court confirmed on April 20, 2023, [No. 22-10082, ECF Docs. 965 & 966]. The Trustee filed a Notice of Effective Date of the Plan on September 20, 2023. [No. 22-10082, ECF Doc. 1119]. The Plan created the Liquidating Trust and designated Dwayne Murray to serve as the Liquidating Trustee. [No. 22-10082, ECF Doc. 916, § 5.1]. After the physical assets of the Debtors were sold at auction, the sale proceeds were held in the Liquidating Trust along with all retained causes of action held by the Debtors, including insurance claims belonging to the Debtors. The Liquidating Trustee is required to liquidate all retained causes of action and other remaining assets and distribute proceeds for the benefit of creditors by rank and order as prescribed by the Plan. [No. 22-10082, ECF Doc. 916, § 5.2].

### B.     Westbank Holdings, LLC's State Court Lawsuit Against the Insurers

Prior to the appointment of the Trustee and confirmation of Fannie Mae's Plan, the Court approved the Debtors' retention of special counsel to represent the Debtors in pursuing insurance claims under the Debtors' various insurance policies for damage related to Hurricane Ida, a Category 4 hurricane that made landfall near Port Fouchon, Louisiana, on August 29, 2021. [No. 22-10082, ECF Doc. 129]. On January 16, 2023, special counsel filed a lawsuit in state court against the Insurers on behalf of one of the Debtors, Westbank Holdings, LLC d/b/a Oakmont Apartments ("Westbank Holdings"), seeking coverage under a commercial property insurance policy and asserting state-law claims associated with damage resulting from Hurricane Ida including breach of contract and bad faith. [ECF Doc. 21, Ex. A (the "Petition")]. The Insurers removed the case to the United States District Court for the Eastern District of Louisiana pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201–208 (the "Convention"). [ECF Docs. 1 & 21].[3] On May 3, 2023, the District Court referred

---

[3]     "The Convention Act provides United States courts with jurisdiction over [a]n action or proceeding falling under the Convention . . . regardless of the amount in controversy." *Brittania-U Nigeria, Ltd. v.*

3

the proceeding to this Court as a matter related to Westbank Holdings, LLC's bankruptcy case. [ECF Doc. 1].

      C.      **The Insurance Policy and Arbitration Clause**

Westbank Holdings is the named insured on a commercial property insurance policy effective between September 26, 2020, and September 26, 2021 (the "Policy"). [ECF Doc. 21, Ex. B]. Some of the Insurers subscribed to the risk under the Policy through the Lloyd's of London insurance market. In that marketplace, member entities subscribe to portions of risk under an insurance policy. When a member (or a group of members through a syndicate or a group of syndicates through a consortium) subscribes to an insurance policy, it is liable only up to the portion of risk to which it subscribed and is severally liable from other members' portions of risk. Although separate reference numbers are issued for each subscriber and each subscriber is obligated only for its share of risk, a single written instrument is executed. Indeed, per the plain terms of the Policy here, separate contractual relationships exist between each subscriber and the insured. *See* Policy, Allocation Endorsement, at 2 ("The Insurer's and/or Company's liability under this Policy for covered losses is several and not joint with other insurers party to this contract. The Insurer and/or Company is liable only for the proportion of liability it has underwritten. . . . This contract shall be construed as a separate contract between the Insured and each of the Insurers. This evidence of coverage consists of separate sections of a composite insurance for all Underwriters at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified above."); Policy, Several Liability Clause ("The liability of an insurer under this

---

*Chevron USA, Inc.*, 866 F.3d 709, 712 (5th Cir. 2017) (internal quotation and citations omitted). "The requirements for Convention jurisdiction are typically (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Id.* (internal quotations and citation omitted).

contract is several and not joint with other insurers party to this contract. An insurer is liable only for the proportion of liability it has underwritten. An insurer is not jointly liable for the proportion of liability underwritten by any other insurer. Nor is an insurer otherwise responsible for any liability of any other insurer that may underwrite this contract. . . . In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is an insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together); Policy, § VII(L) ("The **INSURER'S LIMIT OF LIABILITY** under this **POLICY** for covered losses is several and not joint with other insurers party to this contract. The **INSURER** is liable only for the proportion of liability it has underwritten. The **INSURER** is not jointly liable for the proportion of liability underwritten by any other insurer. Nor is the **INSURER** otherwise responsible for any liability of any other insurer that may underwrite this **POLICY**."); *see also Port Cargo Serv., LLC v. Certain Underwriters at Lloyd's London*, No. 18-6192, 2018 WL 4042874, at *3 (E.D. La. Aug. 24, 2018).

The subscribers to the Policy are Interstate Fire & Casualty Insurance Company, Independent Specialty Insurance Company, and Certain Underwriters at Lloyd's, London Subscribing to Policy No. VPC-CN-0002660-01. *See* Policy (General Property Declarations, at 1 & Allocation Endorsement, at 1). As the Liquidating Trustee observes, both Interstate Fire & Casualty Insurance Company and Independent Specialty Insurance Company are domiciled in the United States (the "Domestic Insurers"). *See* Opposition, at 20 (citing Policy (General Property Declarations, at 1)). The third subscriber to the Policy is Certain Underwriters at Lloyd's, London Subscribing to Policy No. VPC-CN-0002660-01. Those "Certain Underwriters" are identified in the Policy as "Consortium No. 9226, Velocity Property Consortium." *See* Policy (General

Property Declarations, at 1 & Certain Underwriters at Lloyd's Syndicate List). Consortium No. 9226 is comprised of members subscribing through Syndicate 2357 and Syndicate 1458. *See* Policy (Certain Underwriters at Lloyd's Syndicate List). The Liquidating Trustee does not contest the assertion that the sole member of Syndicate 2357 is Nephila 2357 Ltd. and the sole member of Syndicate 1458 is RenaissanceRe Corporate Capital (UK). *See* Motion, at 3–4; Opposition, at 2 & n.3. Both Nephila 2357 Ltd. and RenaissanceRe Corporate Capital (UK) are domiciled in England and Wales (the "Foreign Insurers"). [ECF Doc. 21, Exs. D & E].

The Policy contains an arbitration clause, which requires:

> All matters in dispute between the **NAMED INSURED** and the **INSURER(S)** (hereinafter referred to as "the parties") in relation to this insurance, including this **POLICY'S** formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.
>
> Unless the parties agree upon a single Arbitrator within thirty (30) days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his or her Arbitrator and give written notice thereof to the Respondent. Within thirty (30) days of receiving such notice from Claimant, the Respondent shall appoint his or her Arbitrator and given written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.
>
> If the two Arbitrators fail to agree on the selection of the umpire within thirty (30) days of the appointment of the second named Arbitrator, each Arbitrator shall submit to the other a list of three Umpire candidates, each Arbitrator shall select one name from the list submitted by the other and the Umpire shall be selected from the two names chosen by a lot drawing procedure to be agreed upon by the Arbitrators. Unless the parties otherwise agree, the Arbitration Tribunal shall consist of disinterested and impartial persons presently or formerly employed or engaged in a senior position in Insurance underwriting or claims.
>
> The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any matters which it may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit.

> The parties shall each bear their own costs, expenses and attorney's fees in an Arbitration proceeding. Any Arbitration heading shall take place in Nashville, Tennessee unless [Velocity Risk Underwriters, LLC] is agreeable to a different locale.
>
> The Arbitration Tribunal may not award exemplary, punitive, multiple or other damages of a similar nature.
>
> The award of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to carry out the same. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

Policy, § VII(C). The terms of the Policy reflect the intent of the signatories to settle disputes arising under the Policy by consent or through arbitration:

> **SETTLEMENT OF CLAIMS:** The amount of loss under this **POLICY** shall be payable within thirty (30) days after proof of loss, as herein required, is received and accepted by the **INSURER** and ascertainment of the amount of loss is made either by agreement with the **NAMED INSURED** or an amount is determined by binding Arbitration in accordance with the provisions of this **POLICY**.

Policy, § VII(U).

## DISCUSSION

**A. Bankruptcy Courts May Decline To Compel Arbitration of "Core" Bankruptcy Matters.**

"The Convention is an international treaty that provides citizens of the signatory countries with the right to enforce arbitration agreements." *Bopp v. Indep. Specialty Ins. Co.*, 657 F. Supp. 3d 859, 863 (E.D. La. 2023). "The purpose of the Convention is 'to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.'" *Id.* (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974)). The Federal Arbitration Act ("FAA") not only codifies the Convention and its enforcement in

domestic courts, *see* 9 U.S.C. §§ 201 & 206, but on the whole, the FAA represents a congressional declaration of "a liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

When deciding the enforceability of arbitration clauses, "[t]he general rule is that a federal court must defer to contractually mandated arbitration unless the party opposing arbitration can show that its position is supported by a congressional command that supersedes the direction of the Federal Arbitration Act." *In re Mirant Corp.*, 316 B.R. 234, 237 (Bankr. N.D. Tex. 2004) (citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226–27 (1987)). At times, however, fulfilling the purpose of the Bankruptcy Code can be a congressional command that supersedes the direction of the FAA. As explained by the United States Court of Appeals for the Fourth Circuit:

> While arbitration agreements are to be rigorously enforced, bankruptcy too represents a fundamental public policy. Grounded in the Constitution, bankruptcy provides debtors with a fresh start and creditors with an equitable distribution of the debtor's assets. To those ends, a principal purpose of the Bankruptcy Code is to provide debtors and creditors with the prompt and effectual administration and settlement of the debtor's estate. Similarly, a principal purpose of the Bankruptcy Code is also to centralize disputes over the debtor's assets and obligations in one forum, thus protecting both debtors and creditors from piecemeal litigation and conflicting judgments. Ease and centrality of administration are thus foundational characteristics of bankruptcy law.

*Moses v. CashCall, Inc.*, 781 F.3d 63, 72 (4th Cir. 2015) (internal quotations and citations omitted). Thus, "[a] bankruptcy court does possess discretion . . . to refuse to enforce an otherwise applicable arbitration agreement when the underlying nature of a proceeding derives exclusively from the provisions of the Bankruptcy Code and the arbitration of the proceeding conflicts with the purpose of the Code." *Gandy v. Gandy (In re Gandy)*, 299 F.3d 489, 495 (5th Cir. 2002) (citation omitted).

> **B.** **The Claims Asserted in the Petition Are Not "Core" Under 28 U.S.C. § 157(b); Therefore, the Court Will Enforce the Arbitration Clause in the Policy Pursuant to the Convention and the FAA.**

The parties here agree that the arbitration clause in the Policy is enforceable under the Convention because Westbank Holdings and the Foreign Insurers reside in different countries (the United States and England and Wales) which are signatories to the Convention. The Insurers characterize the claims alleged in the state court Petition as pre-bankruptcy, Louisiana state-law insurance coverage claims that are "non-core" claims, that is, claims that do not arise in or arise under the Bankruptcy Code, but merely relate to Westbank Holdings' bankruptcy case. The Insurers, therefore, ask this Court to enforce the Policy's arbitration clause and compel arbitration pursuant to the Convention as codified in the FAA and stay the adversary proceeding or, alternatively, to dismiss the adversary proceeding entirely in favor of arbitration. The Liquidating Trustee asserts that the dispute before the Court derives exclusively from the Bankruptcy Code because the resolution of the dispute involves the administration of assets of Westbank Holdings' bankruptcy estate, thereby making the dispute a "core proceeding" that should be decided by this Court. Specifically, the Liquidating Trustee asserts that liquidating the insurance claims bears directly upon the distribution creditors will receive pursuant to this Court's Order confirming the Debtors' plan of liquidation.

"[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987). To determine whether a proceeding or claim is "core," the Fifth Circuit instructs lower courts to look to "the form and the substance of the proceeding." *Id*. The state-law nature of a claim is not necessarily dispositive on the issue. *See Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 930 (5th Cir. 1999). But the Fifth

Circuit cautions against interpreting § 157(b) in a way that would cause "the entire range of proceedings under bankruptcy jurisdiction [t]o fall within the scope of core proceedings." *Petroleum Prods. & Servs., Inc. v. Atencio (In re Petroleum Prods. & Servs., Inc)*, 556 B.R. 296, 301 (Bankr. S.D. Tex. 2016) (quoting *In re Wood,* 825 F.2d at 95). Thus "[a] claim based on state created rights which, had there been no bankruptcy, could have proceeded in state court is likely not core." *Id.* (citing *In re Wood,* 825 F.2d at 97).

The Liquidating Trustee is correct that successful prosecution of Westbank Holdings, LLC's insurance claims is of paramount significance to the creditors who stand to receive a distribution through the confirmed Plan. But that does not make such claims "core." Indeed, bankruptcy filing or not, Westbank Holdings, LLC holds the state-law claims alleged in the Petition against the Insurers as a result of the damages caused by Hurricane Ida. The Liquidating Trustee's assertion that the claims are "core" claims that should be decided by this Court is belied by the fact that special insurance counsel for Westbank Holdings, LLC filed the Petition in state court—not this Court—during the course of the Westbank Holdings' bankruptcy case. Although certainly related to Westbank Holdings' bankruptcy case, the Court cannot find that the claims alleged in the Petition are "core" proceedings that "arise only in the context of a bankruptcy case"—particularly post-confirmation. Therefore, the Court will enforce the arbitration clause pursuant to the Convention and the FAA.

  **C.**  **The Application of Equitable Estoppel Is Appropriate Here To Compel the Liquidating Trustee To Arbitrate the Estate's Claims Against All of the Insurers.**

The Liquidating Trustee does not contest the fact that the Convention applies to the Policy's arbitration clause and the Court finds that no bankruptcy exception applies to prevent the Court from compelling arbitration of the claims alleged in the Petition against the Foreign Insurers.

The Liquidating Trustee alternatively asks this Court to bifurcate the resolution of the claims against the Insurers: allow mediation to proceed between the Liquidating Trustee and the Foreign Insurers, but require the Liquidating Trustee to litigate the estate's claims against the Domestic Insurers before this Court.

"[E]quitable estoppel is warranted when [a] signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignator[ies] and one or more of the signatories to the contract." *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 527 (5th Cir. 2000). As described above, the Liquidating Trustee is correct that the Policy provides that Westbank Holdings, LLC holds separate contracts with each Insurer and that each Insurer is liable only for the portion of risk to which it subscribed. But it remains that the Policy consists of a single document that sets forth the terms and conditions of coverage of the risk and that language is identical as to all of the Insurers, foreign or domestic. All of the claims alleged in the Petition are asserted against all Insurers. Any coverage arguments made by the Liquidating Trustee will be identical as to all Insurers and the evidence as to property damage and the alleged breach of the insurance policy will be identical as to all Insurers as well. The Court finds that the Liquidating Trustee's claims against the Foreign and the Domestic Insurers are "inextricably tied" such that it is appropriate to compel arbitration of those claims in the same arbitration proceeding. *See Holts v. TNT Cable Contractors, Inc.*, No. 19-13546, 2020 WL 1046337, at *3 (E.D. La. Mar. 4, 2020).

From a policy perspective, this makes sense. "Allowing plaintiffs to proceed in court against the [D]omestic [I]nsurers while simultaneously proceeding in arbitration against the [F]oreign [I]nsurers would render meaningless the arbitration clause and thwart the intentions of the Convention and the federal policy in favor of arbitration." *Port Cargo Serv., LLC v. Certain*

*Underwriters at Lloyd's London*, No. 18-6192, 2018 WL 4042874, at *7 (E.D. La. Aug. 24, 2018). Moreover, from a practical perspective, bifurcation here would waste resources and run the risk of conflicting and inconsistent judgments. Compelling arbitration between the Liquidating Trustee and all of the Insurers fulfills not only Congress's policy favoring arbitration agreements, but also affirms the parties' negotiated expectations that all disputes would be settled through arbitration. The Court thus concludes that the Domestic Insurers may utilize the theory of equitable estoppel to compel the Liquidating Trustee to arbitrate the claims against them together with the Foreign Insurers in one arbitration proceeding. *See Academy of Sacred Heart of New Orleans v. Certain Underwriters at Lloyd's London*, 651 F. Supp. 3d 822, 830 (E.D. La. 2023); *City of Kenner v. Certain Underwriters at Lloyd's London,* No. 22-2167, 2022 WL 16961130, at *3 (E.D. La. Nov. 16, 2022) (citing *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000)); *Port Cargo Serv., LLC,* 2018 WL 4042874, at *6–8 (same).[4]

## CONCLUSION

For the aforementioned reasons,

**IT IS ORDERED** that the Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that the Liquidating Trustee is compelled to arbitrate all claims alleged in the Petition with all Insurers in one arbitration proceeding.

---

[4] The Liquidating Trustee's assertion that Louisiana law prohibits the enforcement of arbitration clauses in insurance policies is a non-starter. [ECF Doc. 11, at 9]. The Fifth Circuit has long held that the Convention supersedes that law. *See Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 732 (5th Cir. 2009). This Court also directs the parties to the numerous opinions emanating from the Eastern District of Louisiana that have recently addressed the issue in the context of Hurricane Ida claims. *See, e.g.*, *MWH Mini Storage, LLC v. Underwriters at Lloyd's London*, No. 22-2760, 2023 WL 2436681, at *3 (E.D. La. Feb. 6, 2023); *Bopp v. Indep. Specialty Ins. Co.*, 657 F. Supp. 3d 859, 865–66 (E.D. La. 2023); *Academy of Sacred Heart of New Orleans v. Certain Underwriters at Lloyd's London*, 651 F. Supp. 3d 822, 828 (E.D. La. 2023) (citing *Safety Nat'l Cas. Corp.*, 587 F.3d at 732).

**IT IS FURTHER ORDERED** that the above-captioned adversary proceeding is **STAYED** pending completion of arbitration. The parties shall notify the Court when arbitration is concluded.

New Orleans, Louisiana, February 17, 2024.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE